**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KRISTAN DIAZ-CRUZ,** | : | **Civil No. 1:11-CV-1302** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DR. SYMONS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

We now are called upon to write the penultimate chapter in this long-standing

lawsuit.   The plaintiff, Kristan Diaz-Cruz, an inmate in the custody of the

Pennsylvania Department of Corrections housed at SCI-Rockview, commenced this

action *pro se* on July 13, 2011.  In its current form, the lawsuit is reduced to three

defendants and three legal claims.  Presently, Diaz -Cruz is suing Dr. John Symons

and Ted Williams, alleging that these defendants violated his rights under the Eighth

Amendment to the United States Constitution through their deliberate indifference

to his serious medical needs resulting from glaucoma, and negligently failed to

provide the plaintiff with adequate vision care.  In addition, Diaz-Cruz has alleged

that a third defendant, Sergeant Thomas Rogers, retaliated against him for filing

grievances and complaints by denying him access to medication on two occasions and by transferring him to another cell within the prison.

Throughout the protracted history of this case, we have endeavored in numerous ways over the past several years to accommodate the plaintiff's claims, by twice appointing *pro bono* counsel for the plaintiff, and by granting numerous extensions of time for discovery to the plaintiff. These efforts have often been unavailing, as the plaintiff has accepted assistance of *pro bono* counsel but then encountered irreconcilable conflicts with his counsel. Thus, in February of 2016, the plaintiff discharged his second *pro bono* counsel, following a colloquy with the Court in which we warned the plaintiff that he would be compelled to try the case in accordance with the schedule previously set by the Court if no other *pro bono* counsel could be obtained. (Docs. 187, 188.) The plaintiff indicated at that time that he understood that he must be prepared to pursue this case in a timely manner. (Id.)

The precipitating event which led to this conflict with counsel is now apparent, and forms part of the basis for the pending motions for summary judgment filed by the defendants. In January of 2016, the plaintiff's own medical expert unequivocally stated based upon a review of all of the plaintiff's medical records, that "Diaz-Cruz did in fact receive adequate and appropriate ophthalmology follow-up after his transfer to the Rockview State, Correctional Facility [and] that the Rockview State

Correctional Facility and Dr. John Symons, M.D., did use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would, have provided under similar circumstances." (Doc. 192, p. 10.) Thus, Diaz-Cruz is proceeding forward on these medical claims in the face of a declaration from his own medical expert that he received adequate and appropriate ophthalmological care.

On these facts, we find that Diaz-Cruz's medical claims now fail and that defendants Symons and Williams are entitled to summary judgment in their favor on those claims. As for Diaz-Cruz's retaliation claim, this claim is still bound and defined by factual disputes which are not amenable to a summary judgment resolution. Therefore, the summary judgment motion of defendant Rogers will be denied.

## II.   STATEMENT OF FACTS AND OF THE CASE

### A.   THE PLAINTIFF'S MEDICAL CLAIMS

This case involves an inmate's complaints regarding the medical treatment which he received for pre-existing medical conditions, conditions which had effected Diaz-Cruz long before he was incarcerated in the state prison system. According to the well-pleaded facts in Diaz-Cruz's second amended complaint, he has experienced a chronic medical condition, diabetes, since 2000. (Doc. 101, ¶31.) Diaz-Cruz has

also experienced vision problems since 2007, beginning with the loss of vision in his right eye and a decline in visual acuity in his left eye.  (Id., ¶¶35,36.)

On June 8, 2009, Diaz-Cruz was incarcerated at the Berks County Prison.  (Id., ¶39.)  He remained housed at that facility until February 9, 2010, when he was transferred to state custody.  (Id., ¶67.)  According to Diaz-Cruz when he was first incarcerated at the Berks County Prison, he was held in the prison's medical unit.  (Id., ¶42.)  Diaz Cruz also avers that by September 29, 2009, while housed at this county jail, he was diagnosed with a central retinal vein occlusion, the principal medical complaint which he now alleges in his second amended complaint.  (Id.,¶ 64.)

Diaz-Cruz was then transferred to state custody on February 9, 2010, and was housed at the State Correctional Institution (SCI) Rockview.  (Id., ¶¶67-68.)  Upon his arrival at SCI Rockview Diaz-Cruz was medically assessed by a physician assistant.  (Doc.191, ¶ 12.)  That assessment observed that Diaz-Cruz was diabetic, asthmatic, and suffered from hypertension.  This initial assessment also determined that Diaz-Cruz suffered from vision problems, and he was referred to the glaucoma clinic.  (Id., ¶13.)

In the meanwhile, other medical arrangements were being made to address Diaz-Cruz's vision problems.  Thus, Diaz-Cruz was identified by medical staff as

having "a significant eye problem" and was referred to an outside medical group, Eye Consultants of Pennsylvania, for examination and treatment. (Id., ¶¶10-11.) Diaz-Cruz was also seen by a prison physician, the defendant, Dr. John Symons, on March 9, 2010.  Dr. Symons, in turn, referred Diaz-Cruz's vision issues to two medical specialists, Dr. Marcovich, and opthalmologist, and Dr. Lanning, a retinal specialist. (Id., ¶14.) Both of these specialists examined and treated Diaz-Cruz over the ensuing months, prescribing medication for the plaintiff, and ultimately recommending that Diaz-Cruz receive surgery for his vision condition.  (Id., ¶¶14-17.)  That surgical procedure, a vitrectomy, was performed on Diaz-Cruz on April 12, 2012.  (Id., ¶18.) Dr. Symons then retired in August of 2012 and played no further role in the care and treatment of Diaz-Cruz.  (Id., ¶19.)

A review of prison medical records discloses the extensive nature of the care and treatment which Diaz-Cruz has received over the years for his vision problems. According to these records, between February 2010 and April 2012, Diaz Cruz received approximately 20 appointments with physicians and specialists dedicated to his vision issues.  (Doc. 217.)  At these appointments the plaintiff's eyes were examined; he received treatment and injections; and  medical staff diagnosed his condition as one which resulted from a broken blood vessel which Diaz Cruz suffered in September of 2009, prior to his incarceration in state prison.  (Id.)  Moreover, when

Diaz-Cruz's condition declined significantly in March and April of 2012, he received prompt surgical care.  (Id.)  This level of care has continued to this day, with Diaz-Cruz receiving some 11 additional medical appointments for his vision between April 2012 and October 2016.  (Id.)

It is against this factual backdrop that Diaz-Cruz brings two legal claims against Dr. Symons.  First, according to Diaz-Cruz Dr. Symons displayed deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.   Dias-Cruz further alleges a state tort of medical negligence, asserting that the care provided to him by Dr. Symons fell below generally acceptable standards of care in the medical profession.  This latter claim was initially supported by a certificate of merit submitted in January of 2013 by Dr. Terrance Baker.  Dr. Baker's certificate of merit was the legal lynchpin of this malpractice claim.  However, as this litigation progressed, Dr. Baker reassessed his views and withdrew this certificate of merit in January of 2016.  As Dr. Baker observed:

> Discovery has been ongoing from January 2013 until today.  Additional facts in evidence' include the deposition of John Symons, M.D. who was able to document, certify and provide medical records demonstrating that in fact the standards of care were met in providing glucose control during Mr. Diaz-Cruz's admission to the Rockview State Correctional Facility.  Furthermore, Dr. Symons was able to demonstrate based upon personal knowledge and the review of the medical records that Mr.

Diaz-Cruz did in fact receive adequate and appropriate ophthalmology follow-up after his transfer to the Rockview State, Correctional Facility on or around 2/9/10.  Based upon a reasonable degree of medical certainty, it is my opinion that the Rockview State Correctional Facility and Dr. John Symons, M.D., did use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would, have provided under similar circumstances.  It is my opinion that no breaches in care caused Mr. Diaz-Cruz to experience a worsening of his severe retinal vein occlusion with macular engorgement.  On admission to Rockview State Correctional Facility, Mr. Diaz-Cruz had already experienced severe injury to his vision as documented by eye exams prior to his transfer to the Rockview State Correctional Facility and confirmed by additional examination scheduled for him by Dr. Symons in April 2010.  No progression or significant worsening of Mr. Diaz-Cruz's diabetes or vision occurred during this period of review from 2/9/2010 until late April 2010.

(Doc. 192, p. 10.)

Thus, as of January of 2016, the plaintiff's own medical expert had unequivocally stated based upon a review of all of the plaintiff's medical records, that "Diaz-Cruz did in fact receive adequate and appropriate ophthalmology follow-up after his transfer to the Rockview State, Correctional Facility [and] that the Rockview State Correctional Facility and Dr. John Symons, M.D., did use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would, have provided under similar circumstances." (Id.)

This medical opinion is fatal to Diaz-Cruz's malpractice claim, and to date Diaz-Cruz has not cured this fatal defect in his case.  Instead, Diaz-Cruz has simply

offered a declaration from Dr. David Goldberg, a physician who treated him years prior to his incarceration.  Dr. Goldberg's declaration, however, falls well short of what is needed under Pennsylvania law to sustain a medical negligence claim.  In this declaration Dr. Goldberg simply states that he is "available and willing to provide an medical opinion in this matter on Diaz-Cruz's behalf if and when I am called to do so." (Doc. 206.)  Thus, Dr. Goldberg says he would appear, but provides no insight into what he might testify to, what his professional opinions might be or the basis of any opinions he may hold.  This falls far below what is demanded by Pennsylvania law to support such a medical malpractice claim; that is, a declaration from an appropriate licensed professional that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the plaintiff.

Despite the fact that his medical claims are now hobbled in this fashion, Diaz-Cruz also continues to sue a second medical defendant, Ted Williams, the Corrections Health Care Administrator ("CHCA") at SCI-Rockview.  (Doc. 196, ¶¶8-12.)  As the Corrections Health Care Administrator at SCI-Rockview, Williams performed a function that was largely administrative and not clinical in nature.  According to Williams he has never provided any medical care to inmates at SCI-Rockview,

including the plaintiff.  Instead, Williams' administrative duties involved responding to inmate medical grievances, and in this capacity Williams addressed a number of grievances filed by Diaz-Cruz.  (Doc. 208.)  In responding to those grievances, it appears that Williams typically relied upon the medical judgments of the staff who were actually caring for the plaintiff, and often referred Diaz-Cruz's medical concerns to his direct care-givers.  (Id.)

## B.    THE PLAINTIFF'S RETALIATION CLAIMS

While these medical claims constituted the primary complaints made by Diaz-Cruz in this lawsuit, the plaintiff has also pursued a retaliation claim against one additional defendant, Sergeant Thomas Rogers.  As to this last remaining defendant, the well-pleaded facts alleged by Diaz-Cruz in his second amended complaint are as follows:

92. On July 13, 2011, plaintiff Diaz-Cruz initiated the instant litigation.

93. Plaintiff requires insulin to treat his diabetic condition.

94. On September 6, 2011, defendant Rogers did not open plaintiff's cell door so that he could get in the insulin shot line.

95. Plaintiff asked another inmate to go to defendant Rogers' desk to request that his door be opened.

96. When the door opened, plaintiff asked defendant Rogers for a pass, so that he could go to the shot line to obtain his insulin shot.

97. Despite knowing that plaintiff needed his insulin and risked serious injury or death if he did not receive it, defendant Rogers told plaintiff that he was too late for the insulin line and directed him to return to his cell.

98. Plaintiff asked defendant Rogers for a grievance, and defendant Rogers stated, "I hope you fall out."

99. Plaintiff understood defendant Rogers' comment to mean that he hoped that plaintiff would be rendered unconscious and die.

100. On September 6, 2011, the unit manager advised plaintiff that he had advised defendant Rogers that his conduct was not acceptable and not to happen again.

101. On September 7, 2011, and September 8, 2011, however, defendant Rogers again denied plaintiff the right to obtain his insulin.

102. Plaintiff filed a grievance related to defendant Roger's actions.

103. While defendant Rogers denied making the aforementioned statement, defendant Rogers admitted that plaintiff should have been permitted to go to the shot line, as 5 to 10 minutes remained in the line movement.

104. Therefore, plaintiff's grievance was upheld in part and denied in part.

105. In retaliation for filing his grievance and lawsuit, defendant Rogers moved plaintiff's cell from 141 to 101, which is widely referred to as the "Bubble Watch Cell" and the "Troublemaker Cell."

106. The "Troublemaker Cell" is adjacent to an outside door that receives frequent use and exposed plaintiff to the elements.

107. Despite having a compromised immune system, plaintiff was housed in the "Troublemaker Cell," and exposed to the elements, from September 8, 2011, through November 10, 2011.

108. Defendant Rogers told plaintiff that "this is what happens to people who file lawsuits against us."

(Doc. 101, ¶¶92-108.)

As to this claim, the factual record presently before the Court is marked by sharply defined conflicts.  For his part, Diaz-Cruz alleges that he placed Sergeant Rogers on notice of his litigation and grievance activities at the time of this alleged retaliation; that Sergeant Rogers denied him access to medication and forced a cell move in retaliation for Diaz-Cruz's petitioning activity; and that one of his grievances against Sergeant Rogers was upheld, in part, in that correctional officials found that the sergeant had unreasonably denied him access to medication.  Diaz-Cruz further described statements attributed to Sergeant Rogers which could be construed as confirming a retaliatory motive of the sergeant's part, including an allegation that the sergeant moved Diaz-Cruz to another cell after telling him this is what happens to people who file lawsuits.  (Doc. 208.)

In contrast, Sergeant Rogers denied both the conduct attributed to him, as well as the motives and statements ascribed to him for that conduct.  (Doc. 198-B.)  Thus,

Diaz-Cruz's retaliation claims proceeds forward on these sharply cast factual disputes.

### III.   DISCUSSION

#### A.   RULE 56–THE LEGAL STANDARD

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial."  Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment.  See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996).  Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage.  Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to

rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).  In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).  Therefore, in a case where the parties' pleadings reveal disputes regarding the admissibility of

specific evidence, the principles governing consideration of summary judgment motions –which enjoin us to examine the evidence in a light most favorable to the party opposing the motion–also call upon us to resolve all genuine disputes concerning the admissibility of specific items of evidence in favor of the party opposing the motion.  This principle applies with particular force to factual disputes which relate to matters of motive or intent since it is well-settled that:  "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)."  Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  L.R. 56.1.  Under the Local Rules, the failure to follow these instructions  and appropriately challenge the

material facts tendered by the defendant means that those facts must be deemed

admitted, since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement.  This Local Rule serves several
> purposes.  First, it is designed to aid the court in its determination of
> whether any genuine issue of material fact is in dispute.  Second, it
> affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as
> recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go
> beyond the pleadings and by her own affidavits, or by the depositions,
> answers to interrogatories, and admissions on file, *designated specific
> facts showing that there is a genuine issue for trial*.'  477 U.S. 317, 324
> (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa.

Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade

these litigation responsibilities in this regard simply by citing the fact that he is a *pro

se* litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Sanders v. Beard</u>,

No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se*

parties "are not excused from complying with court orders and the local rules of

court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11

(M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil

Procedure).

### B.   DIAZ-CRUZ'S MEDICAL MALPRACTICE CLAIM NOW FAILS AS A MATTER OF LAW

Judged against these benchmarks, Diaz-Cruz's medical malpractice claim now fails as a matter of law since it is now apparent that the plaintiff's own previously retained expert now acknowledges that: "Dr. Symons was able to demonstrate based upon personal knowledge and the review of the medical records that Mr. Diaz-Cruz did in fact receive adequate and appropriate ophthalmology follow-up after his transfer to the Rockview State, Correctional Facility on or around 2/9/10. Based upon a reasonable degree of medical certainty, it is my opinion that the Rockview State Correctional Facility and Dr. John Symons, M.D., did use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would, have provided under similar circumstances. It is my opinion that no breaches in care caused Mr. Diaz-Cruz to experience a worsening of his severe retinal vein occlusion with macular engorgement." (Doc. 192, p. 10.)

This is a fatal failure of proof at this juncture. In order to present a *prima facie* case of medical malpractice under Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which

recovery is sought." <u>Simpson v. Bureau of Prisons</u>, No. 02-2213, 2005 WL 2387631,

at *5 (M.D.Pa. Sept. 28, 2005)   This requirement is imposed upon malpractice

plaintiffs by Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing

a valid certificate of merit along with this malpractice claim or medical negligence

claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals
deviated from an acceptable professional standard, the attorney for the
plaintiff, or the plaintiff if not represented, shall file with the complaint
or within sixty days after the filing of the complaint, a certificate of
merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement
that there exists a reasonable probability that the care, skill or
knowledge exercised or exhibited in the treatment, practice or work that
is the subject of the complaint, fell outside acceptable professional
standards and that such conduct was a cause in bringing about the harm,
or

(2) the claim that the defendant deviated from an acceptable professional
standard is based solely on allegations that other licensed professionals
for whom this defendant is responsible deviated from an acceptable
professional standard, or

(3) expert testimony of an appropriate licensed professional is
unnecessary for prosecution of the claim.

The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania will apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. Liggon-Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir.2007); Ramos v. Quien, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008); Stroud v. Abington Memorial Hosp., 546 F.Supp.2d 238, 248 (E.D.Pa.2008) (noting that Pennsylvania federal courts "have uniformly held that the COM requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court"). Thus, to the extent that an inmate wishes to bring a medical malpractice action, a failure to comply with Rule 1042.3 is a bar to this claim. In this regard, the controlling legal standards can be simply stated:

> Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard." ' Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampapa, 210 F.3d 154, 158-61 (3d Cir.2000), which held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedford Mem'l Hosp., 328 F.Supp.2d 549

21

(W.D.Pa.2004).  Courts may dismiss cases when a plaintiff fails to file a required certificate of merit.  See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law.  See Hodge v. Dept. of Justice, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839, 2009 WL 1770146 (M.D. Pa. June 22, 2009).  Therefore, Diaz-Cruz's status as a *pro se* litigant cannot excuse him from compliance with the substantive state law when bringing this state law claim of malpractice.  Id.

Likewise, Pennsylvania law recognizes that, in some instances, proving the elements of a professional negligence claim may require presentation of expert testimony at trial.  Further, courts recognize that there are consequences which flow from a failure to provide such proof.  Where a tort action turns on allegations of a technical nature, and the plaintiff has failed to provide expert proof, courts have held that these claims fail as a matter of law and must be dismissed.  See e.g., Mays v.

Gen. Binding Corp., No. CIV. 11-5836 JBS/JS, 2013 WL 1986393, at *6 (D.N.J. May 10, 2013), aff'd, 565 F. App'x 94 (3d Cir. 2014); Ellis v. Beemiller, Inc., 910 F. Supp. 2d 768, 774 (W.D. Pa. 2012); Mracek v. Bryn Mawr Hosp., 610 F. Supp. 2d 401, 402 (E.D. Pa. 2009), aff'd, 363 F. App'x 925 (3d Cir. 2010); McCracken v. Ford Motor Co., 392 F. App'x 1, 4 (3d Cir. 2010); Koplove v. Ford Motor Co., 795 F.2d 15, 17 (3d Cir. 1986).   The only exception to this general rule under Pennsylvania exists with respect to negligence claims "where the matter is ' "so simple, and (the) lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons."'   Berman, supra, 205 F.Supp.2d at 364 (citing Brannan v. Lankenau Hospital, 490 PA 588 (1980))."   Hakeem v. Salaam, No. CIV.A. 3:03-0098, 2006 WL 4130488, at *7 (M.D. Pa. July 18, 2006), subsequently aff'd, 260 F. App'x 432 (3d Cir. 2008).

Nor can a plaintiff satisfy this proof requirement by filing a document like the declaration from Dr. David Goldberg, which simply states that the doctor is "available and willing to provide an medical opinion in this matter on Diaz-Cruz's behalf if and when I am called to do so." (Doc. 206.)  This declaration falls far below what is demanded by Pennsylvania law to support such claims; that is, a declaration from an appropriate licensed professional that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that

is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the plaintiff. A legally-sufficient certificate of merit must affirmatively demonstrate "either that (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or ... (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Bresnahan v. Schenker, 498 F. Supp. 2d 758, 761-62 (E.D. Pa. 2007). Therefore, where a purported certificate of merit merely recites that the plaintiff possesses knowledge of his case, that filing does not comply with Rule 1042.3, and the plaintiff's malpractice claim may be subject to dismissal. Id. Similarly, a plaintiff may not satisfy Rule 1042.3 by merely acknowledging the requirement of the rule and promising to comply at some future time. Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010). Furthermore, a pleading which simply parrots the language of Rule 1042.3 without any further substantive content is inadequate, and cannot save a malpractice claim from dismissal. Rodriguez v. Smith, CIV.A.03-3675, 2005 WL

1484591 (E.D. Pa. June 21, 2005)(dismissal without prejudice where plaintiff files certificate that parrots Rule 1042.3 and concedes in the certificate that a licensed professional has not yet supplied the written statement required under Rule 1042.3(a)(1)).

Given the substantive nature of this requirement under Pennsylvania law, its clear application to medical malpractice claims, and Diaz-Cruz's current failure to fully comply with the rule, this medical malpractice claim will be dismissed. Although the plaintiff's failure to comply with Rule 1042.3 requires dismissal of this malpractice claim, we note that the sanction imposed under state law for a violation of this rule, entry of a *non pros* by the prothonotary, has no precise analogue in the federal system. Thus, courts have held in this context that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D. Pa. 2007)(quoting, Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 511 (E.D. Pa. 2004).  Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3, by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for the earlier non-compliance.  See Womer v. Hilliker, 208 A.2d 269 (2006), see also  Pa.R.C.P.

No. 3051.  Therefore, "[w]hen a plaintiff has failed to submit a certificate or merit or otherwise indicated that he has retained an expert witness, it is appropriate for a federal district court to dismiss his professional malpractice claim without prejudice. See Lopez v. Brady, Civil No. 4:CV-07-1126, 2008 WL 4415585, at *14 (M.D.Pa. Sept.25, 2008) (dismissing FTCA medical malpractice claim without prejudice); Henderson v. Pollack, Civil No. 1:CV-07-1365, 2008 WL 282372, at *5 (M.D.Pa. Jan.31, 2008) (dismissing state law medical malpractice claim); Hartman v. Low Sec. Correctional Ins. Allenwood, No. 4:CV-04-0209, 2005 WL 1259950, at *5 (M.D.Pa. May 27, 2005) (same)." Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010).

Accordingly, for the foregoing reasons, Diaz-Cruz's medical malpractice claims against Dr. Symons and Mr. Williams will be dismissed without prejudice.

## C.   DIAZ-CRUZ'S EIGHTH AMENDMENT CLAIM ALSO FAILS

For similar reasons, we also conclude that Diaz-Cruz's Eighth Amendment claims against defendants Symons and Williams fail as a matter of law.  In this case, we are currently confronted with a factual record in which the plaintiff's own expert now attests that:  "Based upon a reasonable degree of medical certainty, it is my opinion that the Rockview State Correctional Facility and Dr. John Symons, M.D.,

did use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would, have provided under similar circumstances. It is my opinion that no breaches in care caused Mr. Diaz-Cruz to experience a worsening of his severe retinal vein occlusion with macular engorgement." (Doc. 192, p. 10.) These findings that "Mr. Diaz-Cruz did in fact receive adequate and appropriate ophthalmology follow-up" and that the medical defendants "did use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would, have provided under similar circumstances," are fatal to an Eighth Amendment claim in a prison medical setting.

Such a claim must meet an exacting factual threshold, one which goes far beyond proof of mere negligence. In order to be civilly culpable for violating an inmate's rights under the Eighth Amendment to the United States Constitution, it must be shown that the defendants displayed "deliberate indifference" to this inmate's medical needs. To sustain such a claim, an inmate must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-

defendant must actually have known or been aware of the excessive risk
to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of

resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106.  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  Durmer, 991 F.2d at 67 (citations omitted).  Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.  Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference.  See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')".  Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Judged by these exacting standards, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate

received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment.  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).  Further, applying these benchmarks, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of treatment he has received for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law.  See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same).

30

This principle applies with particular force to inmate glaucoma care complaints, like those advanced by Diaz-Cruz. As a medical matter, glaucoma is generally acknowledged as the type of "serious medical need" which triggers Eighth Amendment scrutiny in a corrections context. See, e.g., Byrd v. Shannon, No. 09-1551, 2011 WL 780340 (M.D. Pa. Feb. 28, 2011)( Glaucoma constitutes a serious medical need). However, where it is undisputed as a factual matter that prison medical staff have been providing forms of glaucoma treatment to an inmate, and the inmate's complaint in essence entails nothing more than a disagreement between the prisoner and doctors over alternate treatment plans, the inmate's complaint ultimately fails as a constitutional claim under § 1983. Compare Potter v. Abraham, 304 F. App'x 24 (3d Cir. 2008)(affirming summary judgment on inmate Eighth Amendment claim relating to treatment of glaucoma); Byrd v. Shannon, No. 09-1551, 2011 WL 780340 (M.D. Pa. Feb. 28, 2011(summary judgment in favor of defendants on inmate Eighth Amendment claim regarding glaucoma treatment); Wesley v. Murphy No. 08-5551, 2010 WL 2736943 (E.D. Pa. July 12, 2010)(same) with Richardson v. Nassau County, 277 F.Supp.2d 196 (E.D.N.Y. 2003)(denying summary judgment motion relating to Eighth Amendment deliberate indifference claim concerning glaucoma treatment).

There is another necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In a case such as this, where the undisputed facts reveal that an inmate received some level of on-going medical care, it is also well-established that other staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, other staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States, No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007).

Given these legal tenets which govern consideration of any Eighth Amendment medical deliberate indifference claim, this particular claim fails for at least two reasons.

First, and most fundamentally, this claim fails because Diaz-Cruz simply has not shown that defendants Symons and Williams displayed deliberate indifference to his medical needs. Quite the contrary, the evidence reveals that medical personnel were attentive to those needs, which resulted from pre-existing medical conditions suffered by Diaz-Cruz long before he came into their custody. Thus, medical personnel identified those needs, and referred Diaz-Cruz to specialists who treated those needs and ultimately arranged for surgery for the plaintiff in 2012. While Diaz-Cruz is plainly disappointed with these medical outcomes, and disagrees with the course of treatment he received, that medical disagreement between an inmate and his

care-givers simply does not rise to the level of deliberate indifference to a serious medical need.  Therefore, this claim fails.  Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same).

Indeed, as we have noted the plaintiff's own expert has recently concluded upon a review of the pertinent medical files that "Mr. Diaz-Cruz did in fact receive adequate and appropriate ophthalmology follow-up" and that the medical defendants "did use such care as reasonably prudent healthcare providers practicing in the same field in the same or similar locality would, have provided under similar circumstances," (Doc. 192, p. 10.)  These findings not only rebut a claim of medical negligence; they are antithetical to any assertion of deliberate indifference to a serious medical need, and compel dismissal of this Eighth Amendment claim

Beyond this overarching flaw, Diaz-Cruz's Eighth Amendment claim against defendant Williams, which is largely premised upon Williams' responses to the various prison grievances filed by Diaz-Cruz, fails for another independent reason. It is well-settled that inmates do not have a constitutional right to a prison grievance system.  See Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723

34

at *1 (3d. Cir. June 30, 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir.

2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on

a prisoner.").  Consequently, dissatisfaction with response to an inmate's grievances

does not support a constitutional claim.  <u>See also</u> <u>Alexander v. Gennarini</u>, 144 Fed.

Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis

for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995)

(because prison grievance procedure does not confer any substantive constitutional

rights upon prison inmates, the prison officials' failure to comply with grievance

procedure is not actionable).  <u>See also</u> <u>Cole v. Sobina</u>, No. 04-99J, 2007 WL

4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison

administrative appeal process does not implicate a constitutional concern.").

This principle applies with particular force to medical complaints like those

raised here.  In a case such as this, where the grieving inmate's complaints reflect that

the prisoner is receiving some level of on-going medical care, prison administrative

staff will not be "considered deliberately indifferent simply because they failed to

respond directly to the medical complaints of a prisoner who was already being

treated by the prison doctor." <u>Durmer v. O'Carroll,</u> 991 F.2d 64, 69 (3d. Cir. 1993).

Applying this standard, courts have repeatedly held that, absent some reason to

believe that prison medical staff are mistreating prisoners, staff who refer inmate

medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims.  <u>See, e.g.,</u> <u>Johnson v. Doughty</u>, 433 F.3d 1001 (7th Cir. 2006); <u>Spruill v. Gillis</u>, <u>supra</u>; <u>Durmer v. O'Connor, supra</u>; <u>Garvey v. Martinez</u>, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); <u>Hodge v. United States</u>, No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007); <u>Flanyak v. Hopta</u>, 410 F.Supp.2d 394 (M.D. Pa. 2006).  Furthermore, prison staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." <u>Garvey v. Martinez</u>, 2010 WL 569852, at *7 (M.D.Pa. Feb 11,2010)(citations omitted); <u>see Johnson v. Doughty</u>, 433 F.3d 1001 (7th Cir. 2006).  In fact, in a similar factual setting we note that the court of appeals has specifically found that a prison health care administrator's response to an inmate grievance will not support an Eighth Amendment deliberate indifference claim.  <u>Davis v. Superintendent Somerset SCI</u>, 597 F. App'x 42, 44 (3d Cir. 2015).  Therefore, to the extent that Diaz-Cruz attempts to premise the liability of Mr. Williams, the prison Health Care Administrator,  on an Eighth Amendment deliberate indifference claim based upon his role as a grievance response official, that claim fails as a matter of law, and must be dismissed.

In a final effort to stave off summary judgment on these medical claims Diaz-Cruz argues in general terms that he has not been given sufficient access to his medical records, and without further explanation moves under Rule 56(d) for an order directing the defendants to file the totality of his medical records with the Court, in the apparent belief that it will be incumbent upon the Court to identify those issues of fact which may exist in the medical file and preclude summary judgment.  (Doc. 208, pp. 16-17.)

This speculative argument fails for several reasons.  First, it fails as a matter of law under Rule 56(d) of the Federal Rules of Civil Procedure, which provides that:

(d) When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P., Rule 56(d).

Under Rule 56(d),it is incumbent upon "a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary

judgment; and why it has not previously been obtained.  See Hancock Industries v. Schaeffer, 811 F.2d 225, 229–30 (3d Cir.1987) (Rule 56(f) motion, even if treated as an affidavit, insufficient because it failed to explain need for discovery and did not identify particular facts hoped to be uncovered); Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir.1986) (Rule 56(f) affidavit insufficient because it did not specify what discovery was needed or why it had not previously been secured)." Dowling v. City of Philadelphia, 855 F.2d 136, 139-40 (3d Cir. 1988).  This three-part showing describing (1) the specific information sought, (2) how that information would preclude summary judgment, and (3) the efforts made to obtain the information cannot be satisfied through a "vague and general statement" Malouf v. Turner, 814 F. Supp. 2d 454, 460 (D.N.J. 2011)  " 'Vague or general statements of what a party hopes to gain through a delay for discovery under ... Rule 56(d) [ ] are insufficient.' Atl. Deli & Grocery v. United States, Civil No. 10–4363 (JBS/AMD), 2011 WL 2038758, at *3 (D.N.J. May 23, 2011) (citing Hancock Indus. v. Schaeffer, 811 F.2d 225, 230 (3d Cir. 1987))." MacQueen v. Union Carbide Corp., No. CV 13-831-SLR-CJB, 2015 WL 167674, at *4 (D. Del. Jan. 8, 2015).  Nor may a Rule 56 affidavit serve as a vehicle to " to attempt to reargue this Court's [prior] ruling[s]." Molinaro v. Hart Electronics Corp. of Scranton, No. 72-250, 1980 WL 30271, at *2 (M.D. Pa. May 20, 1980).

Here, Diaz-Cruz has not explained what he hopes to gain through this wholesale discovery disclosure.  Nor has he identified what evidence he believes would exist in these files to support his claims.  Diaz-Cruz also has not explained what efforts he has taken to obtain this information, and the record of these proceedings are replete with indications that the *pro bono* counsel who represented the plaintiff had full access to these records.  Indeed, as the defendants note, these medical records were always available to Diaz-Cruz, were in fact shared with the plaintiff's expert witness,[1] and were used extensively by *pro bono* counsel in depositions.  (Docs.216, 217.)  Therefore, Diaz-Cruz's suggestion that he has been systematically denied access to his own medical records is contradicted by the proceedings in this case, and fails as a matter of fact.  Accordingly, this belatedly reference to Rule 56(d) cannot defeat the defendants' motion for summary judgment on these medical claims, which should now be dismissed.

---

[1]Indeed, there is a certain irony to this request.  As we have noted, it appears that the plaintiff's expert's review of these detailed medical records led to expert to conclude that there was no violation of any generally acceptable medical standards in the care and treatment of Diaz-Cruz's vision problems.  Thus, Diaz-Cruz seems to invite us to independently review these records in an effort to impeach the opinion of his own expert, who states that he has examined the records and found no flaws in the treatment provided to the plaintiff.

### D.   DIAZ-CRUZ'S RETALIATION CLAIM MAY NOT BE DISMISSED

Finally, we find at this time that disputed issues of fact preclude summary judgment on Diaz-Cruz's retaliation claim against Sergeant Rogers.  With respect to this claim, Diaz-Cruz alleges that Sergeant Rogers, the Block Sergeant of his unit, engaged in retaliatory action against him for filing a civil action relating to his Eighth Amendment medical claims, and for later lodging a prison grievance.  (Doc. 101, ¶¶92-108.)  In particular, Diaz-Cruz alleges that he was denied insulin and transferred to more restrictive and less favorable housing due to his litigation and grievance activity.   According to Diaz-Cruz's second amended complaint this allegedly retaliatory behavior spanned several months between July and September 2011. Moreover, notably, Diaz-Cruz alleges direct proof of a retaliatory motive, in that he ascribes to Sergeant Rogers statements which, if believed, would clearly permit an inference that the defendant intended to retaliate against the plaintiff.  For example, when the Sergeant placed Diaz-Cruz in the "troublemaker" cell it is alleged that "Defendant Rogers told plaintiff that 'this is what happens to people who file lawsuits against us.' "  (Doc. 101, ¶108.)

To sustain a *prima facie* cause of action for retaliation, a plaintiff must satisfactorily plead that:   "1) the conduct in which he was engaged was constitutionally protected; 2) he suffered adverse action at the hands of prison

officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002); see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). After establishing that his conduct was constitutionally protected, an inmate alleging retaliation must present sufficient facts to show that he suffered some adverse action against him by prison officials. Allah v. Seiverling, 229 F.3d 320, 333 (3d Cir. 2000). For an official's action to be "adverse," it must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Rauser, 241 F.3d at 333. However, the adverse act alone does not have to be violative of the Constitution because section 1983 permits suits based on adverse action taken against an individual in response to a constitutionally protected activity. Allah, 229 F.3d at 224. Courts have found the actions of prison officials to be adverse in a variety of contexts. See Rauser, 241 F.3d at 333-34 (finding that denial of parole, monetary penalties, and transfer of inmate to a distant prison are sufficient to show adversity); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (finding that plaintiff's claim that prison officials falsely charged him with misconduct in retaliation for protected activity was not "indisputably meritless"); Allah, 229 F.3d at 224 (finding that placing a prisoner in administrative custody was an adverse action). Most notably, a denial of medical care, if undertaken in retaliation for petitioning or grievance

41

activity, may constitute an adverse action, satisfying the second element of this particular constitutional tort.  O'Brien v. Michigan Dep't of Corr., 592 F. App'x 338, 340 (6th Cir. 2014).

Furthermore, the plaintiff must establish a causal connection between his constitutionally protected activity and the allegedly retaliatory actions of the defendant by showing that the adverse action "was motivated, in whole or in part, by his [protected] conduct." Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).  A plaintiff ultimately faces an exacting burden in meeting the third prong of a retaliation claim and:  " To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997).  In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Finally, if a plaintiff meets his *prima facie* burden under this three-pronged retaliation test, the burden shifts to the defendant to show by a preponderance of the evidence that they would have taken the same action for "reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d 334; see also Graham, 89 F.3d at 80.

While this is ultimately an exacting burden of proof, the analytical paradigm for examining retaliation claims also calls upon us to evaluate the quality of proof of human motivation. On this score, it is well-settled that: "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)." Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992).

Here, we find that disputed issues of fact prevent a summary judgment resolution of Diaz-Cruz's retaliation claim against Sergeant Rogers. Construing the evidence in a light most favorable to the plaintiff, as we are required to do at this stage of the proceedings, we find that Diaz-Cruz has presented sufficient evidence which would satisfy the first prong of a retaliation claim by alleging that he was exercising a constitutionally protected right by filing grievances and a federal complaint against the prison staff. Filing a complaint against prison officials alleging

deliberate indifference to serious medical needs "implicates conduct protected by the First Amendment." See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah, 229 F.3d at 224-25; Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002).

Additionally, Diaz-Cruz presents sufficient evidence to, at a minimum, create a genuine issue of material fact regarding whether adverse action was taken against him, and thus meets the second prong of the retaliation test. For example, Diaz-Cruz alleges that Rogers denied him insulin necessary for treatment of his diabetes. A denial of medical care driven by a retaliatory motive would satisfy the "adverse action" requirement prescribed by law for a retaliation claim. O'Brien v. Michigan Dep't of Corr., 592 F. App'x 338, 340 (6th Cir. 2014). Beyond the alleged denial of health care, Diaz-Cruz also alleges that he was moved to a less desirable cell with an open door that exposed him to the elements. Further, Diaz-Cruz asserts that when he asked for a grievance form, defendant Rogers stated, "I hope you fall out," a comment which he understood to mean that Rogers hoped that plaintiff would be rendered unconscious and die.

Finally, Diaz-Cruz has presented evidence which would permit a finding of a causal link between his constitutionally protected conduct, and this allegedly retaliatory action, asserting that in the course of this allegedly retaliatory conduct "Defendant Rogers told plaintiff that 'this is what happens to people who file lawsuits

against us.' " (Doc. 101, ¶108.)  While we agree that verbal threats, standing alone, do not typically constitute adverse action or support an independent cause of action, Burgos v. Canino, 358 F. App'x 302, 306 (3d Cir. 2009); contra Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere *threat* of harm can be an adverse action."), Diaz-Cruz's evidence–which we must view in a light most favorable to the plaintiff at the summary judgment stage of the proceedings–indicates that he was denied insulin shots, threatened with bodily harm, and transferred to an undesirable prison cell.  Collectively these actions may be found to be the type of conduct that would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Rauser, 241 F.3d at 333.  In particular, the denial of medical care can constitute an "adverse action" for purposes of a retaliation claim.  O'Brien v. Michigan Dep't of Corr., 592 F. App'x 338, 340 (6th Cir. 2014).  Further, the plaintiff's allegation that Sergeant Rogers expressly stated that "this is what happens to people who file lawsuits against us," (Doc. 101, ¶108.), would permit an inference that the adverse actions by prison officials were "motivated, in whole or in part, by his conduct." Graham, 89 F.3d at 80.  Therefore, Diaz-Cruz's averments regarding the statements he ascribes to Rogers in conjunction with Rogers' alleged actions could permit an inference of causation.  See Farrell v. Planters Lifesavers Co., 206

F.3d 271, 281 (3d Cir. 2000) (allowing trier of fact to infer causation from "evidence gleaned from the record as a whole").

While the defendant argues with great vigor that the inferences which Diaz-Cruz would ask us to draw from these facts will not support a retaliation claim, (Doc. 107, pp.13-16.), in considering a motion for summary judgment "[t]he motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists. Matsushita Electric Industrial Co. v. Zenith Radio Corp.., 475 U.S. 574, 596 (1986)." Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992). With our task limited to determining whether there remains a genuine issue of material fact with respect to this claim, we find that such genuine issues exist in this case. Those genuine, material, disputed issues relate both to the sergeant's actions and his motivations, matters which cannot be resolved on the conflicting factual record before us but rather must be reserved for trial.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the defendants' motions for summary judgment, (Docs. 189 and 195.), are GRANTED, in part, and DENIED, in part, as follows:

1.    Summary judgment is GRANTED in favor of defendants Symons and

Williams on the plaintiff's medical malpractice and Eighth Amendment

medical deliberate indifference claims.

2.    The motion for summary judgment with respect to the plaintiff's

retaliation claim against defendant Rogers is DENIED since disputed

issues of material fact preclude summary judgment on that claim.

An appropriate order follows.

So ordered this 26th day of October 2016.

                                        *S/Martin C.  Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge